IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

FRANCISCO JAVIER FELIX, *Appellant.*

No. 1 CA-CR 12-0707
FILED 5-21-2015

Appeal from the Superior Court in Yuma County
No. S1400CR201101023
The Honorable John Neff Nelson, Judge

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

COUNSEL

Office of the Attorney General, Phoenix
By Colby Mills
*Counsel for Appellee*

Sharmila Roy, Laveen
*Counsel for Appellant*

**OPINION**

Judge John C. Gemmill delivered the opinion of the Court, in which Judge Kent E. Cattani joined.  Presiding Judge Randall M. Howe concurred in part and dissented in part.

**G E M M I L L**, Judge:

¶1          Francisco Javier Felix appeals his convictions and sentences on ten counts of attempted second-degree murder, ten counts of aggravated assault, one count of assisting a criminal street gang, and one count of endangerment.  We vacate Felix's convictions for attempted second-degree murder because the jurors were improperly instructed that they could convict Felix of that offense if they found that he attempted to cause death through conduct he knew would cause death *or serious physical injury*.  We affirm Felix's remaining convictions and sentences and remand for further proceedings.

## BACKGROUND

¶2          We view the facts in the light most favorable to sustaining the jury's verdicts and resolve all reasonable inferences against the defendant. *State v. Vendever*, 211 Ariz. 206, 207 n.2, 119 P.3d 473, 474 n.2 (App. 2005).

¶3          Felix, his girlfriend Heidy, and three other friends went to a bar in Yuma to celebrate a friend's birthday.  While they were there, Heidy received phone messages from her cousin Elizabeth, inviting them to a party at Elizabeth's house.  Elizabeth also told Heidy to tell Felix that she did not want any trouble because she knew that Felix was a member of the East Side Naked City gang.

¶4          The group arrived at the house at approximately 2:30 a.m. and found the party underway, with approximately 15-20 people in the house.  Heidy and Felix went into the bathroom.  When they came out, someone who appeared to be waiting for Felix immediately began punching his face and body.  Others joined in and beat Felix to the ground.  At some point, one of the people hitting Felix yelled "Okie" or "Okie Town," referring to a rival gang.  When Heidy stepped in to help Felix, the person who had initially hit Felix told his friends to "jump her," and several people started hitting and beating Heidy.  Felix and Heidy fled the house, but the others followed them and continued to attack.   When Elizabeth's boyfriend Steve noticed that Heidy was being hurt, he told everyone to leave and stated he was going to call the police.

¶5          Felix, Heidy, and their friends returned to their vehicle.  Felix was bleeding, his clothes were ripped, and one of his eyes was badly bruised, but he refused to go to the hospital.  On their drive home, Felix took Heidy's phone and called someone to say he had been "beat up really bad" and that "they were going to do something about it."  He told the person that he needed a ride and asked to be picked up.   Felix also stated

he needed to "get these mother f---ers" and asked the person to "pick up a toy or get a toy" — common gang terminology for a gun.

¶6        When Felix and Heidy arrived at their home, Felix did not go inside, but asked Heidy for Elizabeth's address. A friend and fellow East Side Naked City gang member picked Felix up in a car at about 4:30 a.m.

¶7        Around 5:00 a.m., a shooter approached the front of Elizabeth and Steve's house on foot and fired nine large-caliber high-velocity bullets in multiple bursts from an AK-47 into the house. While firing, the shooter changed locations at least one time. Steve, Elizabeth, their sixteen-month-old baby, J.V., and seven of Steve's friends were inside at the time. No one was injured by the shots.

¶8        Two neighbors heard the gunshots and observed a vehicle with male occupants and a male figure running toward the vehicle as it sped away, but neither witness could identify the individuals. After the shooting, Felix told Heidy that he had given her cousin's address to his friends and that they had "shot up" her cousin's house.

¶9        The police investigation led to Felix as the suspected shooter and the State charged him with nine counts of attempted first-degree murder, one count of attempted first-degree murder of a juvenile, nine counts of aggravated assault with a deadly weapon, one count of aggravated assault of a juvenile, one count of assisting a criminal street gang, and one count of endangerment. The jury declined to convict Felix on the attempted first-degree murder counts, but found him guilty of ten counts of the lesser-included offense of attempted second-degree murder. The jury also found Felix guilty of ten counts of aggravated assault with a deadly weapon, one count of assisting a criminal street gang, and one count of endangerment. The jury found that the attempted murder, aggravated assault, and endangerment offenses were committed "with the intent to promote, further or assist any criminal conduct by a criminal street gang."

¶10        The trial court sentenced Felix to concurrent terms of 12 years' imprisonment on each of the attempted second-degree murder convictions, and a concurrent term of 3.5 years' imprisonment for assisting a criminal street gang. On each of the aggravated assault offenses with adult victims, the trial court sentenced him to concurrent terms of 10 years' imprisonment. For the aggravated assault conviction involving J.V., a dangerous crime against children, the court sentenced Felix to a consecutive term of 15 years'

imprisonment. The court sentenced Felix to time served on the endangerment offense. Felix timely appeals.

## ANALYSIS

¶11        Felix raises four arguments: (1) the trial court gave incorrect instructions on attempted second-degree murder and accomplice liability; (2) there was insufficient evidence to support his conviction of aggravated assault against J.V; (3) the trial court incorrectly ordered consecutive sentences based on its finding that the aggravated assault against J.V. was a dangerous crime against children; and (4) the trial court abused its discretion when it admitted photographs of a stuffed gorilla and a crib with bullet holes in them.

## I.     Improper Jury Instruction on Attempted Second-Degree Murder

¶12        The trial court instructed the jury on attempted first-degree premeditated murder and, without objection, instructed the jury as follows regarding the lesser-included offense of attempted second-degree murder:

> The crime of second degree murder requires proof of one of the following.
>
> The defendant or an accomplice attempted to intentionally cause the death of another person; or, two, the defendant or an accomplice attempted to knowingly cause the death of another person by conduct which the defendant knew would cause death *or serious physical injury*.

(Emphasis added.)

¶13        Felix challenges the portion of the instruction permitting the jury to return a guilty verdict on the alternative showing that Felix knew that his conduct "would cause death *or serious physical injury*." He did not object to the instruction at trial, and we are therefore limited to fundamental error review on appeal. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005). Felix has the burden to "establish both that fundamental error exists and that the error in this case caused him prejudice." *Henderson*, 210 Ariz. at 567, ¶ 20, 115 P.3d at 607.

### A. Fundamental Error

¶14 "[I]nstructing a jury on a non-existent theory of criminal liability is fundamental error." *State v. Dickinson*, 233 Ariz. 527, 530, ¶ 12, 314 P.3d 1282, 1286 (App. 2013); *State v. James*, 231 Ariz. 490, 493, ¶ 13, 297 P.3d 182, 185 (App. 2013). In *State v. Ontiveros*, 206 Ariz. 539, 542, ¶ 14, 81 P.3d 330, 333 (App. 2003), this court held that attempted second-degree murder can be committed only when the defendant intended to kill the victim or knew that his conduct would cause death. *See also Dickinson*, 233 Ariz. at 530, ¶ 11, 314 P.3d at 1285 (following *Ontiveros* and recognizing that attempted second-degree murder cannot be "based on knowing merely that one's conduct will cause serious physical injury"). Such an instruction potentially relieves the State of its burden of proving an element of the offense of attempted second-degree murder. *Dickinson*, 233 Ariz. at 531, ¶ 12, 314 P.3d at 1286. Consequently, instructing the jury that it could convict Felix of attempted second-degree murder based on a finding that he knew that his conduct would merely cause serious physical injury resulted in fundamental error.

### B. Prejudice

¶15 Fundamental error alone is not, however, sufficient grounds for reversal. *Id.* at 531, ¶ 13, 314 P.3d at 1286. To obtain relief based on an erroneous jury instruction, a defendant must also show prejudice, *i.e.* "that a reasonable jury 'could have reached a different result' had the jury been properly instructed." *State v. James*, 231 Ariz. 490, 494, ¶ 15, 297 P.3d 182, 186 (App. 2013) (quoting *Henderson*, 210 Ariz. at 569, ¶ 27, 115 P.3d at 609).

¶16 "Prejudice is a fact-intensive inquiry, the outcome of which will depend upon the type of error that occurred and the facts of the particular case." *Dickinson*, 233 Ariz. at 531, ¶ 13, 314 P.3d at 1286 (internal quotations and citations omitted). Felix "must show that a reasonable, properly instructed jury 'could have reached a different result.'" *Id.* (citation omitted). Here, to determine whether Felix has established prejudice, we may consider the jury instructions as given, the evidence at trial, the parties' theories, and the parties' arguments to the jury. *See id.* Under the facts and circumstances of this case, we conclude that Felix has met his burden of showing that a properly instructed jury "could have" reached a different result.

¶17 The State argues that the erroneous "serious physical injury" portion of the instructions did not affect the jury's deliberations, but our supreme court has repeatedly stated that we should presume that jurors

follow the instructions provided to them. *State v. Payne*, 233 Ariz. 484, 518, ¶ 151, 314 P.3d 1239, 1237 (2013); *State v. Dann*, 220 Ariz. 351, 366, ¶ 75, 207 P.3d 604, 619 (2009); *State v. Newell*, 212 Ariz. 389, 403, ¶ 68, 132 P.3d 833, 847 (2006). Here, the incorrect instruction, allowing the jurors to convict based on Felix's alleged knowledge that his conduct would cause serious physical injury, was delivered to the jury by the trial court both orally and in writing. In the absence of evidence in the record demonstrating that the jury failed to follow its instructions, we presume the jury did so here. We therefore reject the assertion that the jury did not consider the "serious physical injury" language.

¶18 The State further argues that because it advanced a theory of the case inconsistent with the shooter merely knowing that his conduct would cause serious physical injury, the jury's attention was not focused on the "serious physical injury" language and the instruction was therefore not prejudicial to Felix. We note that, although "arguments of counsel generally carry less weight with a jury than do instructions from the court," *Boyde v. California*, 494 U.S. 370, 384 (1990), in some trials, the arguments of counsel can cure or obviate instructional ambiguity or error, *see State v. Bruggeman*, 161 Ariz. 508, 510, 779 P.2d 823, 825 (App. 1989) ("Closing arguments of counsel may be taken into account when assessing the adequacy of jury instructions."). Here, however, we disagree that the prosecutor's argument rendered the incorrect jury instruction immaterial.

¶19 The State's theory throughout the case was that Felix, acting with premeditation, intended to kill all of the individuals inside the house when he fired the AK-47 at the house from short range. In his opening statement, the prosecutor stated that Felix was out to get "revenge" for being beaten and embarrassed earlier that night. The prosecutor argued that the evidence would show Felix "emerged from the vehicle, walked up to the home, knowing that there was [sic] people still within that home . . . walked in front of that home with an AK-47 or an SKS, a high powered assault rifle, and stood before that home, and finished his plan." During trial, the State's evidence established that the home was a modular home with thin walls. The type of high-powered semi-automatic weapon used would shoot through "multiple structures and multiple walls," was "only made for going through and destroying things," and the majority of the bullets were fired at the level of the "chest or stomach area . . . more of the lower belt buckle up to about the neck region," a height likely to inflict serious injury or death. In closing, the prosecutor continued to argue for conviction on ten counts of attempted first-degree murder. He argued that the nine shots were fired by Felix with the premeditated intent to kill the

ten people in the house in retaliation for his having been injured and embarrassed by rival gang members in front of his girlfriend and others.

¶20        Although the prosecutor did not argue for a conviction based on "serious physical injury" and did not call specific attention to the faulty language in the instruction, his arguments seeking a conviction for attempted first-degree murder addressed Felix's culpable mental state, *i.e.* his alleged premeditation. The jury rejected the prosecutor's argument that Felix acted with premeditated intent to kill and chose instead to convict Felix of attempted second-degree murder, which involves a less culpable state of mind. The instructions pertinent to that lesser-included offense included the erroneous definitional language. Because the jurors rejected premeditation, they presumably reviewed carefully the language describing the required mental state for the charged offense and the lesser-included offense of attempted second-degree murder, including the erroneous language. We therefore reject the State's contention that its vigorous pursuit of first-degree murder convictions compels the conclusion that the "serious physical injury" language could not have prejudiced Felix.

¶21        We also find unpersuasive the State's assertion that defense counsel's argument did not implicate the erroneous instruction. Although defense counsel's primary argument was that Felix was not present and had an alibi, counsel also asserted in closing an alternative defense based on the mindset of the shooter. Defense counsel specifically argued that whoever did the shooting did not plan his shots like a person who really had the intent to kill:

> Mr. Felix wasn't there, but the shooter who was there had no way of knowing that his or her actions would kill anybody, and in some ways you can see by the results nobody was killed or even hit.
>
> I would ask you to look at Exhibit No. 120 when you get back and start deliberations, and that's a photograph of the house, and you can see and we talked about it, Deputy S---- testified that's what the house looked like when they showed up. The blinds were down, the door was closed, the blinds in the living room were also down. Somebody was there shooting at that house, they would not have seen anybody.
>
> The one window that went -- that was right there on the corner, there were no lights on in there. There was still a party

going on. At that time, there were nine people in there playing beer pong. Person would have probably heard those people, would have known that people were there, would have gone towards the middle where the living room was. That's where, if you're gonna go and kill somebody, that's where at that time you would have been. That's where you would have gone to shoot, where the people were. The people that you could hear, the people that you knew were there, would have been able to see some light in the house, that's where you're gonna go. Not gonna stand at one corner where it's dark and quiet and shoot there. There's a party going on, you can see all those cars out there, that's not where you're gonna go.

The defense attorney further argued that the shooter acted only recklessly, rather than intentionally:

[T]hat's the floor plan that we got with some of those drawings of where the bullets went. The person right there who took those shots, shot them all in the same direction.

If someone was intending to kill everybody at that house, knowing that they were gonna kill everybody at that house, they would have spread those shots out. But you'll see that all of those shots, almost all of those shots go almost in an exact straight line. There are a couple of strays, but whoever it was shot directly in one line, and that's not something that you're gonna do to try and kill everybody in the house. It doesn't make sense.

Now, you did get an instruction on recklessly, and I'm gonna read it to you, but it says recklessly means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstances exist. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe, and that's what this is. This is not intentionally trying to kill somebody -- I mean there's a statute about shooting at a residence -- but this is someone shooting away from where the people in the house are, not targeting anybody, not aiming at anybody.

Detective G----- told us, you can't hit something that you don't aim at. *This is not an intentional crime or a knowing crime. It is not an attempted murder of any kind. Shooter could not see anyone, he or she would not know or intend that his actions will cause death. That's the way it is. And if the action's reckless, then you cannot convict Mr. Felix or anyone else of attempted first or second-degree murder.*

(Emphasis added.) Although defense counsel did not mention the serious physical injury portion of the jury instructions, his alternative argument surely drew the jury's attention to the question of what culpable mental state was required for conviction and may have prompted the jurors to consider and apply the mistakenly included "serious physical injury" option.

¶22        Finally, although the evidence was sufficient to support the convictions for attempted second-degree murder, the sufficiency of the evidence is not the test of whether the fundamentally erroneous jury instruction prejudiced Felix. Nor is the test whether this court thinks another jury, properly instructed, will probably find Felix guilty again. Rather, the test is whether a reasonable jury, properly instructed, *could have* found Felix not guilty of attempted second-degree murder. *See James*, 231 Ariz. at 494, ¶ 15, 297 P.3d at 186; *Dickinson*, 233 Ariz. at 531, ¶ 13, 314 P.3d at 1286. A shooter who stands outside a home and fires nine rounds into the house, without seeing the people inside or knowing how many are there and where they are, might intend to kill them all. Alternatively, the shooter could intend or know that his shots will scare them all and perhaps injure some of them or even kill some of them. Thus, while we agree with the State that the evidence supports the convictions for attempted second-degree murder, in our view the evidence also supports a reasonable conclusion that the shooter intended or knew that his shots would scare the people inside and perhaps injure and even kill some of them. Accordingly, we disagree that the only logical conclusion a jury could have reached was that the shooter intended to kill everyone in the house.

¶23        We respectfully disagree with our dissenting colleague on the question of prejudice. The dissent cites *Dickinson*, 233 Ariz. at 533, ¶ 22, 314 P.3d at 1288, to argue that there was no prejudice here. The defendant in *Dickinson* also was convicted of attempted second-degree murder with a similar instructional error. But in *Dickinson* the defendant used his truck to run down a bicyclist, striking the bicyclist with the truck two times. *Id.* at 531, ¶ 14, 314 P.3d 1286. After the second hit, the victim was dragged

underneath the truck for some distance. *Id.* Based on this evidence, which showed that the defendant clearly saw and targeted the specific victim, this court determined that no reasonable juror could have found that the defendant did not intend to kill the bicyclist. *Id.* In contrast, at the time of the shooting in this case, the shooter was standing outside the house in which the victims were located and could not see the victims or know precisely where they were in the house. The fact that he shot nine shots at the house with a high-powered rifle does not automatically establish that he intended to kill each of the ten people inside, particularly since many of the shots were fired at the same location.

**¶24** In our view, the evidence can be seen to establish any one of three things: (1) reckless conduct by the shooter (particularly in light of the absence of evidence that he knew where people were in the house), (2) an intent to seriously injure the people in the house, or (3) an intent to kill the people in the house. In light of the erroneous instruction, the jurors could have stopped deliberations after concluding that Felix intended to cause serious physical injury. Thus, we cannot conclude that no reasonable jury, properly instructed, could have declined to convict Felix of attempted second-degree murder.

**¶25** We therefore hold, based on the particular facts of this case, that Felix has established prejudice from the fundamental error in the jury instruction. *See Henderson*, 210 Ariz. at 568, ¶¶ 23–24, 115 P.3d at 608; *see also Ontiveros*, 206 Ariz. at 543, ¶ 18, 81 P.3d at 334. His attempted second-degree murder convictions must be vacated for a new trial.[1]

---

[1] We decline the State's request to overrule *Ontiveros* as wrongly decided. *Ontiveros* was decided in 2003. The "*Ontiveros* error" is the inclusion of the "serious physical injury" language from the elements of second-degree murder when marrying the definition of "attempt" with second-degree murder. This error continues to be made far too often. *See, e.g., State v. Juarez-Orci*, 236 Ariz. 520, 342 P.3d 856 (App. 2015); *State v. Dickinson*, 233 Ariz. 527, 314 P.3d 1282 (App. 2013); *State v. Ortiz*, 2 CA-CR 13-0157, 2014 WL 2095188 (Ariz. App. May 16, 2014) (mem. decision), *State v. Corrales*, 1 CA-CR 12-0532, 2014 WL 173901 (Ariz. App. Jan. 16, 2014) (mem. decision), *State v. Calbillo*, 1 CA-CR 11-0391, 2012 WL 6719572 (Ariz. App. Dec. 27, 2012) (mem. decision), *State v. Hansen*, 1 CA-CR 10-0248, 2011 WL 2937208 (Ariz. App. July 21, 2011) (mem. decision); *State v. Maikowski*, 2 CA-CR 09-0288, 2011 WL 2695761 (Ariz. App. June 3, 2011) (mem. decision); *State v. Cross*, 2 CA-CR 08-0316, 2009 WL 1830796 (Ariz. App. June 25, 2009) (mem. decision). We urge prosecutors, defense attorneys, and trial judges to avoid

## II.   Accomplice Liability Instruction

**¶26**         The indictment charged that Felix or an accomplice "intentionally put another person in reasonable apprehension of immediate physical injury."  Because no direct evidence identified the shooter, the trial court instructed the jury on accomplice liability as follows:

> Accomplice means a person, who, with the intent to promote or facilitate the commission of the offense, does any of the following:
>
> One, solicits or commands another person to commit the offense; or, two, aids, counsels, agrees to aid, or attempts to aid another person in planning or committing the offense; or, three, provides means or opportunity to another person to commit the offense.
>
> A defendant is criminally accountable for the conduct of another if the defendant is an accomplice of such other person in the commission of the offense, including any offense that is a natural and probable or reasonably foreseeable consequence of the offense for which the person was an accomplice.

Felix argues for the first time on appeal that this instruction was erroneous regarding the aggravated assault counts because it "could have misled the jury into rendering guilty verdicts for reasonable apprehension assaults even if [Felix] did not have the *mens rea* of intent."  Felix's failure to object to the instruction at trial limits our review to fundamental error.  *Henderson,* 210 Ariz. at 567, ¶ 19, 115 P.3d at 607.  Felix must establish that fundamental error exists and that the error prejudiced him.  *Id.*  We reject his claim because we conclude that the instruction was correct and no error resulted from the instruction.

**¶27**         The trial court's accomplice liability instruction was based on the statutory definition of "accomplice," *see* A.R.S. § 13-301, and the statutory description of accomplice liability, *see* § 13-303(A)(3).  Felix nevertheless maintains that, because the prosecutor argued Felix need not be the actual shooter to be held responsible as an accomplice to the shooter,

---

the use of the phrase "serious physical injury" when instructing on *attempted* second-degree murder.

the jury "could have used the instruction to conclude that [he] did not have to have the intent to place the victims in reasonable apprehension, as long as the shooter had such an intent and as long as the offense was reasonably foreseeable as far as [he] was concerned." He argues that this indicates that the jurors might have believed that he "could have been found liable for the intentional acts of his accomplice" even if he only had a *mens rea* of "recklessness," and suggests that this misapprehension influenced both the attempted second-degree murder and aggravated assault convictions.

**¶28** Contrary to Felix's argument, however, the instruction included the important language emphasizing that an accomplice is a person who, "with the intent to promote or facilitate the commission of the offense," undertakes certain actions. *See supra* ¶ 12. Accordingly, the jury was instructed that Felix would be guilty as an accomplice only if he had the "*intent* to promote or facilitate the commission of the *offense*." (Emphasis added.) And the jury was properly instructed that the offense of reasonable apprehension aggravated assault required proof that "the defendant or an accomplice *intentionally* put another person in reasonable apprehension of immediate physical injury." (Emphasis added.) Considering these instructions together, Felix is guilty if he intended either to place the victims in reasonable apprehension of immediate physical injury or to promote or facilitate another person doing exactly that. Either way, the instructions required that Felix have the *intent* to place the victims in reasonable apprehension. No error arose from the jury instructions regarding accomplice liability. *See State v. Ellison*, 213 Ariz. 116, 138, ¶¶ 92–94, 140 P.3d 899, 921 (2006) (similarly explaining that the jury instruction defining an "accomplice" properly required proof the defendant "had the specific intent to promote or facilitate the offense that he actually aided, counseled, agreed to aid, or attempted to aid").

## III.    Aggravated Assault of J.V.

**¶29** The State charged that Felix committed the aggravated assault of J.V., Steve and Elizabeth's 16-month-old daughter, when Felix intentionally placed the child in reasonable apprehension of immediate physical injury using a deadly weapon. The State also charged that the offense was a dangerous crime against children. The jury found Felix guilty of the offense as charged and also that the offense was a dangerous crime against children. On appeal, Felix argues that the State presented insufficient evidence to sustain either this conviction or the jury's finding that the crime is a dangerous crime against children.

¶30        "[The] question of sufficiency of the evidence is one of law, subject to *de novo* review on appeal." *State v. West*, 226 Ariz. 559, 562, ¶ 15, 250 P.3d 1188, 1191 (2011).  We conduct our review viewing all the evidence at trial in the light most favorable to sustaining the jury's verdicts and resolving all reasonable inferences against the defendant. *State v. Bible*, 175 Ariz. 549, 595, 858 P.2d 1152, 1198 (1993).  Sufficient evidence may be comprised of both direct and circumstantial evidence, *id*. at 560 n.1, 858 P.2d at 1163 n.1, and be substantial enough for a reasonable person to determine that it supports a verdict of guilt beyond a reasonable doubt. *State v. Stroud*, 209 Ariz. 410, 412, ¶ 6, 103 P.3d 912, 914 (2005).  "Reversible error based on insufficiency of the evidence occurs only when there is a complete absence of probative facts to support the conviction."  *State v. Soto-Fong*, 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996).

¶31        Felix first maintains that the State presented no evidence that J.V. experienced "reasonable apprehension" of physical injury.  Felix does not dispute that an assault rifle was fired into the house where J.V. was present, but asserts that, by virtue of her age, J.V. could not have had fear of sounds outside her vision, even the sounds of gunshots.  The evidence does not support Felix's assertions.

¶32        Either direct or circumstantial evidence is sufficient to prove that a defendant placed a victim in "reasonable apprehension of immediate physical injury." *See Bible*, 175 Ariz. at 560 n.1, 858 P.2d at 1163 n.1.  Nothing requires that the victim testify to actual fright or apprehension.  *State v. Wood*, 180 Ariz. 53, 66, 881 P.2d 1158, 1171 (1994); *see also, State v. Speaks*, 691 A.2d 547, 550–51 (R.I. 1997) (imperturbability, fortitude, or unawareness of intended victim not a defense to placing baby in reasonable apprehension of immediate injury).  Here, Elizabeth testified that the shots fired were audible in her bedroom, where she was lying down and playing with J.V., and that J.V. "started crying" when the shots were fired.  Elizabeth then crouched over J.V. and covered her.  This evidence is sufficient to support the jury's reasonable inference that J.V. was frightened by the gunshots and its finding that she was thereby placed in "reasonable apprehension" of physical harm when she heard them.

¶33        Felix also argues for the first time on appeal that the aggravated assault of J.V. does not qualify as a dangerous crime against children because no evidence showed that he "targeted" her as a victim. Felix asserts that it was merely "fortuitous" that a child was the victim of

his aggravated assault.[2]  Aggravated assault involving the discharge of a deadly weapon committed against a minor who is under the age of fifteen is a dangerous crime against children.  A.R.S. § 13-705(P)(1)(b).  A defendant need not know the age of the victim when committing the offense for it to qualify as a dangerous crime against children; the only requirement is that his conduct be "focused on, directed against, aimed at, or target a victim under the age of fifteen."  *State v. Miranda-Cabrera*, 209 Ariz. 220, 223, ¶ 14, 99 P.3d 35, 38 (App. 2004).  Our supreme court has explained that the intent of the statute is to punish more severely those who prey upon children as opposed to those whose actions only coincidentally affect a child.  *Id.*

¶34        Felix relies on our supreme court's decision in *State v. Williams*, 175 Ariz. 98, 854 P.2d 131 (1993).  *Williams* involved a drunk driver who drove his car in an extremely aggressive and dangerous manner, placing other drivers and passengers in vehicles around him at danger.  *Id.* at 104, 854 P.2d at 137.  The defendant rammed a station wagon, and its fourteen-year-old passenger was thrown from the vehicle and badly injured.  *Id.* at at 99, 854 P.2d at 132.  Our supreme court held that, because "no evidence [showed] that the [defendant's] behavior was directed at or focused upon the victim, or that he was even aware of the minor's presence in the station wagon," the dangerous crime against children statute did not apply.  *Id.* at 104, 854 P.2d at 137.

¶35        Unlike the defendant in *Williams*, however, Felix admitted that although he did not see the baby during the party that night, he knew that J.V. lived at the house with Steve and Elizabeth when the house "was shot up."  He was therefore aware that by indiscriminately shooting an assault rifle into the house at 5:00 a.m., he would be directing his fire at the baby, who, as one occupant of the house, was likely to be home and asleep at that hour of the morning.  *See, e.g., Miranda-Cabrera*, 209 Ariz. at 225–26, ¶ 22–24, 99 P.3d at 40–41 (evidence that defendant abandoned adult parents and their child in the desert was sufficient evidence that defendant's conduct focused on the child for purposes of the dangerous crime against children statute, even if the harm against the child victim was not intended).  Sufficient evidence supports the jury's finding that Felix's aggravated

---

[2]        Although Felix's failure to object that the aggravated assault does not qualify as a dangerous crime against children limits our review to fundamental error, *see Henderson,* 210 Ariz. at 567, ¶ 19, 115 P.3d at 607, an illegal sentence constitutes fundamental error, *State v. McDonagh*, 232 Ariz. 247, 249, ¶ 7, 304 P.3d 212, 214 (App. 2013).

assault of J.V. is a dangerous crime against children. *See Bible*, 175 Ariz. at 595, 858 P.2d at 1198.

## IV.     Consecutive Sentence for Dangerous Crime against Children

¶36         Felix also argues for the first time that the trial court committed fundamental error by imposing a consecutive sentence for this offense.  He maintains that, because the attempted second-degree murder offenses and the aggravated assault offenses in this case "arose out of the same act of shooting into the house," the double punishment statute, A.R.S. § 13-116, prohibits consecutive sentences for an act punishable in different ways by different sections of the law.  The Arizona Supreme Court's recent opinion in *State v. Jones*, 235 Ariz. 501, 334 P.3d 191 (2014), defeats Felix's argument.  *Jones* held that the dangerous crimes against children provision, A.R.S. § 13-705, takes priority over A.R.S. § 13-116.  *Id.* at 502, ¶ 1, 334 P.3d at 192.

## V.     Admission of Photographs

¶37         Before trial, Felix sought to preclude the State from presenting photographs of a crib with bullet damage and a stuffed gorilla with a bullet hole in it.  Felix argues that they had no probative value and were being admitted to improperly inflame the jury.  According to defense counsel, they were not relevant to the only question for the jury to decide, which was "whether or not Mr. Felix took a shot at this particular house."  The State responded that the photographs were essential to establish the trajectory of the bullets in the house as well as the presence of a child and the potential harm to that child.  After viewing the photographs, the trial court denied Felix's motion, finding that the probative value of the photos outweighed any prejudice.  On appeal, Felix argues that the trial court committed reversible error in admitting the photographs.  We do not agree.

¶38         We review a superior court's ruling on the admissibility of evidence, including photographic evidence, for abuse of discretion. *State v. Aguilar*, 209 Ariz. 40, 49, ¶ 29, 97 P.3d 865, 874 (2004); *State v. Anderson*, 210 Ariz. 327, 339, ¶ 39, 111 P.3d 369, 381 (2005).  Under that standard, "we uphold a decision if there is 'any reasonable evidence in the record to sustain it.'" *State v. Butler*, 230 Ariz. 465, 472, ¶ 28, 286 P.3d 1074, 1081 (App. 2012) (quoting *State v. Morris*, 215 Ariz. 324, 341, ¶ 77, 160 P.3d 203, 220 (2007)).

¶39        The State argued that, to support the allegations of attempted murder and of dangerous crimes against children, the photographs were necessary to show both that the trajectory of the bullets was at a level that could have been lethal to the home's occupants and that a child resided in the home.  The trial court here reviewed the photographs and engaged in the proper balancing analysis. *See* Ariz. R. Evid. 401, 403.  The photographs were relevant to show the potential harm to the inhabitants and to confirm the presence of a child in the house.  Furthermore, Felix does not allege that the State used the photographs in an improper fashion, and we find no evidence to support such a claim.   On this record, including the photographs themselves, we conclude the trial court did not abuse its discretion by admitting them over Felix's objection. *See Aguilar*, 209 Ariz. at 49, ¶ 29, 97 P.3d 874.

## CONCLUSION

¶40        For the foregoing reasons, we vacate Felix's convictions for attempted second-degree murder and remand for a new trial.  We affirm all of Felix's other convictions and sentences.

## H O W E, Judge, Concurring in Part and Dissenting in Part,

¶41        I concur in the Majority's affirmance of Felix's convictions and sentences for aggravated assault, assisting a criminal street gang, and endangerment. I also agree that the attempted second-degree murder instruction was fundamental error. This Court has repeatedly held that the instruction is erroneous because it does not require that the jury determine whether the defendant intended to kill—the mens rea for attempted second-degree murder—but allows a conviction based on a lesser mens rea—that the defendant merely knew that his conduct would cause serious physical injury. *See State v. Ontiveros*, 206 Ariz. 539, 541 ¶ 11, 81 P.3d 330, 332 (App. 2003); *State v. Dickinson*, 233 Ariz. 527, 530 ¶ 11, 314 P.3d 1282, 1285 (App. 2013); *State v. Juarez-Orci*, 236 Ariz. 520, 524 ¶ 14, 342 P.3d 856, 860 (App. 2015). Even the Criminal Revised Arizona Jury Instructions applicable to Felix's trial recognized such an instruction is incorrect. *See* RAJI (Criminal) 3d, § 11.04, cmt. (2011 Rev.) ("There is no crime of attempted second-degree murder if the defendant only knows that his or her action would cause serious physical injury rather than death.") (citing *Ontiveros*, 206 Ariz. at 542 ¶ 14, 81 P.3d at 333). Trial courts should cease giving this instruction.

¶42        But I cannot agree that the error justifies reversing Felix's attempted second-degree murder convictions. "It is the rare case in which an improper [jury] instruction will justify reversal . . . when no objection has been made in the trial court." *Dickinson*, 233 Ariz. at 530 ¶ 10, 314 P.3d at 1285. Because Felix did not object to the instruction at trial—when the erroneous instruction could (and likely would) have been easily corrected—but waited for appeal to raise it, reversal is justified only if he proves that the error prejudiced him. *State v. Henderson*, 210 Ariz. 561, 567 ¶ 20, 115 P.3d 601, 607 (2005). To prove prejudice, Felix must show that "a reasonable, properly instructed jury could have reached a different result" than did the first jury. *Dickinson*, 233 Ariz. at 531 ¶ 13, 314 P.3d at 1286 (internal quotation marks and citation omitted). Speculation that the outcome might have been different is not enough to prove prejudice. *See State v. Martin*, 225 Ariz. 162, 166 ¶ 15, 235 P.3d 1045, 1049 (App. 2010) ("Speculative prejudice is insufficient under fundamental error review."). In evaluating prejudice, we consider "the parties' theories, the evidence received at trial and the parties' arguments to the jury." *Dickinson*, 233 Ariz. at 531 ¶ 13, 314 P.3d at 1286.

¶43        Considering these factors, Felix cannot show that the jurors could have found him not guilty of attempted second-degree murder had they not been misinstructed that knowingly causing serious physical injury satisfied the mens rea requirement of the offense. The evidence leaves no doubt that the shooter intended to kill and not merely to cause serious physical injury. The evidence established that the shooter shot nine times at the victims' house using a high-powered semi-automatic AK-47 rifle loaded with large caliber high-velocity bullets. The victims' house—a mobile/modular home—was little protection from the assault; an AK-47 was "only made for going through and destroying things" and would go through "multiple structures and multiple walls." The shooter also shot at the house from close range, changed positions in front of the house at least once, and fired the rifle at the level of the "chest or stomach area . . . more of the lower belt buckle up to about the neck region"—a height most likely to kill. Nothing in the evidence presented at trial would allow the jurors to find that the shooter intended only to cause serious physical injury.

¶44        The State never mentioned the serious physical injury language in the jury instruction, and its theory of the case was solely that Felix was the shooter and that he premeditatedly intended to kill the individuals inside the house. In its opening statement, the State stated that Felix was out to get "revenge" for being beaten and embarrassed and that the evidence would show that he "emerged from the vehicle, walked up to the home, knowing that there was [sic] people still within that home . . .

17

walked in front of that home with an AK-47 or an SKS, a high powered assault rifle, and stood before that home, and finished his plan."

¶45      The State maintained this theory in its closing argument after the presentation of the evidence. The State contended that Felix fired nine rounds into the home aimed specifically at the waist to neck level to maximize the chance of a hit:

> [T]hese shots weren't fired randomly into this home. The evidence shows that these shots were fired in such a way as to maximize the chance that someone would be hit. And when we're talking about a round from a military assault rifle, a hit means — is likely to mean death.
>
> He fired the powerful rifle nine times into the home . . . not into the walls of the yard, not into the cars and not into the roof, but waist to neck level into that home. And he did it from a standing position, not a speeding car, and a reasonable inference from that is because he wanted to be able to place his shots; he wanted to be able to control where that automatic rifle was firing. The intent inference, you all know the intent inference. You've heard it a thousand times. Actions speak louder than words. Certainly it would be great to have a case in which you had testimony where someone is running up to someone, I'm intending to kill you. But it's rare that you get cases like that, and the law does not require that a defendant make a formal pronouncement, I'm here to kill everyone in this structure. No. Actions speak louder than words. The facts and the circumstances behind this case show what they were attempting to do, or at the very least, knew what could happen when they did it. Knowingly shooting repeatedly into an occupied home and kill people.

The State never deviated from the argument that Felix intended to kill the persons in the house in retaliation for having been injured and embarrassed by rival gang members in front of his girlfriend and friends. The State's argument did not implicate at all the instruction's serious physical injury language.

¶46      Felix's defense did not implicate the erroneous language, either. He defended the charges by testifying that he was not the shooter and not involved in the shooting. He testified that he was no longer a member of a gang and that at the time of the shooting, he was at a friend's

house and did not leave until 7:00 or 8:00 a.m. In Felix's closing argument, defense counsel continued this theory of the case and argued that the State had no physical evidence linking Felix to the crimes and suggested that it was more likely that the Okie Town gang members had returned and shot at the house in retaliation for Steve's having ordered them to leave the party. Felix never admitted that he was the shooter and never argued that he knew only that his actions would cause serious physical injury.

¶47        The evidence and arguments of counsel focused only on whether Felix was the shooter and whether the shooter intended to kill. Nothing in the evidence or arguments gave the jurors the occasion to consider whether Felix merely knew that his actions would cause serious physical injury. Because the erroneous part of the jury instruction did not come into play, I find that Felix cannot show any prejudice from the error, and his convictions for attempted second-degree murder should be affirmed.

¶48        This is not a case like *Ontiveros*, where the defendant, Ontiveros, admitted that he shot the victim but denied that he shot him in the face or head, 206 Ariz. at 540 ¶ 3, 81 P.3d at 331, and the State "argued repeatedly" that Ontiveros "intentionally fired the gun with the purpose or intent of causing serious physical injury or death," *id.* at 543 ¶ 19, 81 P.3d at 334. In its rebuttal closing argument, the State specifically argued that Ontiveros intended to cause serious physical injury. *Id.* The evidence and the State's argument squarely presented the serious physical injury issue to the jury. In this case, however, the evidence does not suggest that Felix intended to use his AK-47 rifle loaded with large caliber high-velocity bullets to cause only serious physical injury, nor did the State and Felix present argument about serious physical injury as the mens rea for attempted second-degree murder. The erroneous part of the instruction was never at issue here.

¶49        This case is little different than *Dickinson*. There, the evidence showed that the defendant, Dickinson, used his truck to run down and run over his victim, who was riding his bicycle. *Id.* at 529 ¶¶ 5–6, 314 P.3d at 1284. The State's theory was that Dickinson tried to kill the victim. *Id.* at ¶ 6. Dickinson did not testify, nor did he call witnesses, but he asserted a defense of mistaken identity and claimed no involvement. *Id.* Dickinson argued that someone else ran over the victim and that he was being framed. *Id.* At no time did Dickinson assert that he hit the victim, but did not intend to or try to kill the victim. *Id.*

**¶50**            On appeal after conviction for attempted second-degree murder, we agreed with Dickinson that the attempted second-degree murder instruction was fundamental error, *id.* at 530 ¶ 12, 314 P.3d at 1285, but we nevertheless found that he had not proved prejudice:

> The State's theory was that Dickinson intended to kill the victim; Dickinson's defense was mistaken identity and that he was not involved in the charged conduct in any respect. Neither of these competing views suggests that Dickinson intended to cause serious injury to the victim (as opposed to kill him), which is the fundamental error in the jury instructions.

*Id.* at 532 ¶ 22, 314 P.3d at 1287. The case before us should be resolved the same way: The State's theory was that Felix intended to kill the victims; his defense was mistaken identity (alibi) and that he was not involved in the shooting. Because neither the State's or Felix's views suggests that Felix intended to cause only serious physical injury (as opposed to death), the erroneous part of the jury instruction is not implicated, and Felix cannot demonstrate prejudice.

**¶51**            Although the Majority finds otherwise, its reasons are—with respect—unpersuasive. The Majority first finds that the jurors must have considered the instruction's erroneous language because the trial court read the instruction to them and provided them a written copy of the instruction, and the jurors were presumed to read and follow the instructions. *See supra* ¶ 16. But this circumstance cannot carry any weight in a prejudice analysis. Every juror in a criminal case has read the instructions and has been given a written copy of them and is presumed in every case to have read and followed the instructions. By that light, every erroneous instruction is prejudicial.

**¶52**            The important consideration is not whether the jurors read the erroneous language of an instruction—I have no doubt that they read and heard the words "or serious physical injury" in the attempted second-degree murder instruction—but whether the evidence and counsels' arguments required them to consider that language in determining whether Felix committed attempted second-degree murder. The jurors were instructed that as they determined the facts of the case, "you may find that some of the instructions no longer apply. You must then consider the instructions that do apply. . . ." Because the evidence did not show that Felix shot at the mobile home with an AK-47 only to cause serious physical

injury, and neither the State or Felix's own counsel so argued, the jurors had no occasion to consider the erroneous language.

¶53 The Majority also finds that the jurors considered the "or serious physical injury" language because they considered and rejected the State's argument that Felix acted with premeditation when he intentionally shot at the mobile home. *See supra* ¶ 19. The jurors' decision that the State had not proved premeditation does not, however, mean that they considered whether Felix merely knew that his actions would cause serious physical injury. No evidence presented at trial would allow the jurors to find that Felix merely knew that his shooting at the house with an AK-47 rifle loaded with large caliber high-velocity bullets would cause serious physical injury, and the State and Felix's counsel never discussed serious physical injury in their opening or closing arguments. The fact that Felix's mental state was at issue does not mean—without more—that the jurors considered the instruction's erroneous language.

¶54 The Majority further argues that the jurors considered the serious physical injury language because Felix's counsel argued that whoever the shooter was, the shooter did not intend to kill, which put Felix's mental state at issue. *See supra* ¶¶ 20–21. In addition to arguing that Felix was not the shooter, Felix's counsel did indeed argue that the shooter did not intend to kill. He claimed that the shooter shot into areas of the house that had no lights on and shot in a pattern that a shooter would not use to "try and kill everyone in the house." From this premise, Felix's counsel argued that the shooter acted recklessly, which meant that the crime was "not an attempted murder of any kind."

¶55 Although counsel's argument clearly implicated the mental state of the shooter—whether Felix's or someone else's—it did not require the jurors to consider the serious physical injury language. Felix's counsel never mentioned that language and in fact referred the jurors to an entirely different instruction—the instruction defining recklessness. The erroneous language had no relevance to counsel's argument. Counsel did not argue that the shooter did not intend or know that the act of shooting would cause serious physical injury. Nothing in counsel's specific argument on lack of intent offered the jurors an occasion to consider the serious physical injury language.

¶56 The Majority concedes that the State did not rely on the serious physical injury language as a theory of guilt at trial and that Felix's counsel never addressed that language either. The Majority's finding that the language nevertheless prejudiced Felix rests on its belief that because

Felix's mental state was at issue and the serious physical injury language was listed in the instruction as a possible mental state that would support conviction for attempted second-degree murder, the jurors could have relied on it to convict Felix. But nothing in the evidence or argument of counsel gave the jurors any occasion to consider that language in determining whether Felix was guilty of attempted second-degree murder. The record does not support the Majority's finding of prejudice.

**¶57** Although the serious physical injury language of the attempted second-degree murder instruction was undoubtedly erroneous, Felix was entitled to a fair trial, not a perfect one. *State v. Dann*, 205 Ariz. 557, 565 ¶ 18, 74 P.3d 231, 239 (2003). The erroneous language, however, had no effect on Felix's trial. Felix approached a thin-walled mobile/modular home with an AK-47 rifle loaded with large caliber high-velocity bullets and shot nine times into the home. No evidence showed that he could have possibly intended only to cause serious physical injury, and neither the State nor Felix's counsel discussed that as a possibility. Because a reasonable jury would still have convicted Felix of attempted second-degree murder if it had been properly instructed, I find that Felix has not demonstrated that the erroneous language prejudiced him. I therefore dissent from the Majority's decision ordering that Felix's attempted second-degree murder convictions be vacated.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama