NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

NICHOLAS PUMA, *Appellant.*

No. 1 CA-CR 15-0010
FILED 10-29-2015

---

Appeal from the Superior Court in Maricopa County
No. CR2013-448795-001
The Honorable Alfred M. Fenzel, Judge

**AFFIRMED AS MODIFIED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Terry J. Adams
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which
Presiding Judge Diane M. Johnsen and Judge Kent E. Cattani joined.

---

**G E M M I L L**, Judge:

¶1        Nicholas Puma appeals from his convictions and sentences for one count of armed robbery, a class two dangerous felony, one count of theft, a class one misdemeanor, and two counts of theft of credit card, class five felonies.  Puma's counsel filed a brief in compliance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), stating that he has searched the record and found no arguable question of law and requesting that this court examine the record for reversible error.  Puma was afforded the opportunity to file a *pro se* supplemental brief and did so. *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999).  For the following reasons, we affirm with one modification.

## FACTS AND PROCEDURAL HISTORY

¶2        "We view the facts and all reasonable inferences therefrom in the light most favorable to sustaining the convictions."  *State v. Powers*, 200 Ariz. 123, 124, ¶ 2 (App. 2001).

¶3        On September 1, 2013, a man robbed a Pizza Hut in Scottsdale Arizona.  The store manager ("A.B.") testified that the man slid over the counter and demanded she give him the money in the drawer and vault.  The man was wearing all dark clothing, had his face covered, and was wearing a backpack in front of him with a crowbar sticking out of it.  The man had one hand in the backpack.  A.B. was frightened for her safety and turned over approximately $200 in cash from the drawer, but she told the man she could not open the vault.  The man told A.B. to leave the store.

¶4        The intruder was not apprehended at the scene.  After the police arrived, A.B. and another employee, B.S., realized that their purses had been removed from the restaurant.  Their purses collectively contained cash and several credit and debit cards.  B.S. also had an iPad in her purse.  Following the incident at Pizza Hut, A.B. and B.S.'s cards were used at several gas stations and a Best Buy.  Video footage from one gas station showed a man wearing a shirt with distinct lettering on it attempting to use the cards.  Although most of the transactions were denied, B.S.'s card was used to purchase a laptop for $895.63 at Best Buy.

¶5        The Best Buy transaction also involved use of a Reward Zone card, and investigators were able to identify Nicholas Puma as the owner of the rewards card used.  Investigators learned a possible address for Puma, obtained a search warrant, and executed a search of the residence

and a vehicle at the residence. Detectives found a laptop and box that matched the sale from Best Buy, an iPad matching the one B.S. had in her purse, a shirt matching the one worn by the subject in the gas station surveillance video, B.S.'s voter registration card from her wallet, a purse matching one taken from Pizza Hut, clothing and a backpack matching those worn by the intruder at Pizza Hut, and several crowbars.

¶6 After a four day trial, a jury returned a verdict of guilty on Count 1 for armed robbery, Count 3 for theft, and Counts 4 and 5 for theft of a credit card. The jury acquitted Puma of Count 2, aggravated assault. The trial court then held a hearing in which the State presented evidence of Puma's criminal history. The trial court found that Puma had at least two qualifying prior armed robbery convictions, requiring sentencing under Arizona Revised Statutes ("A.R.S.") section 13-706. Specifically, Puma had convictions in 1995, arising from offenses on separate dates in 1994 and prior convictions in 1980, resulting from offenses in 1979.

¶7 On Count 1, armed robbery, the trial court sentenced Puma to life in prison with no possibility of release for 35 years, with 434 days of presentence incarceration credit. On Count 3, theft, the trial court ordered six months in jail with credit for time served. On Counts 4 and 5, theft of credit card, the trial court ordered prison for the presumptive term of five years with 434 days of presentence credit for each conviction. The sentences were ordered to be served concurrently.

¶8 Puma timely appeals, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031 and 13-4033.

## DISCUSSION

¶9 In addition to our independent review of the record, Puma in his supplemental brief presents three arguments. First, Puma contends that the jury was under undue stress during deliberations. Next, Puma argues that the trial court abused its discretion in denying Puma's Rule 20 motion regarding armed robbery. Finally, Puma asserts that the trial court erred in not having a jury determine the aggravating factors that increased his sentence.

## I. Jury Deliberations

¶10        Puma argues that the trial court abused its discretion by failing to replace Juror No. 10 who began to suffer physical pain and required medical attention after the verdict had been rendered. Puma states that he witnessed the juror "grip his right hand over the left side of his chest" when the judge was giving the final instructions. The only reference to the occurrence in the record on appeal is found in the transcript recording events after the verdict was delivered. It is Puma's contention that the juror's condition led to a rushed deliberation and that the trial court abused its discretion in not replacing the juror with an alternate. Because Puma did not make this objection contemporaneously, our review is for fundamental error. *State v. Felix*, 237 Ariz. 280, 284, ¶ 13 (App. 2015). The burden is on Puma to show that "fundamental error exists and that the error in this case caused him prejudice." *Id.* (quoting *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005)). Puma has shown neither.

¶11        Our supreme court has stated that we will generally assume that a jury follows its instructions, in the absence of some reason in the record to conclude otherwise. *See State v. Manuel*, 229 Ariz. 1, 6, ¶ 24 (2011). The closing instructions included the following:

> Make sure that the deliberations are conducted respectfully and that all issues are fully discussed. The discussions should be open and free so that every juror may participate.

¶12        The record on appeal does not support Puma's contention that one of the jurors was in physical distress before deliberations or that the jury was under distress during its deliberations. If Puma or his attorney had made an objection at that time, the trial court may have been able to address the subject in a timely and meaningful manner. The record does not reveal any issue regarding the health of a juror until after the verdict was rendered, and Puma's unsworn assertions in his supplemental brief do not establish fundamental error or prejudice.

## II. Sufficiency of the Evidence

¶13        After the State rested, Puma asked for judgment of acquittal under Arizona Rule of Criminal Procedure ("Rule") 20(a). He argued there was no evidence that force was threatened or a dangerous instrument was used as required for armed robbery. The trial court denied the motion.

Puma makes the same argument now and also contends generally that there was insufficient evidence to support the guilty verdicts.

¶14      We review de novo a trial court's denial of a motion for acquittal, "viewing the evidence in a light most favorable to sustaining the verdict." *State v. Bible*, 175 Ariz. 549, 595 (1993). When considering a motion for judgment of acquittal, the relevant question is whether "*any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.*" *State v. West*, 226 Ariz. 559, 562, ¶ 16 (2011) (quoting *State v. Mathers*, 165 Ariz. 64, 66 (1990)). And "[w]hen reasonable minds may differ on inferences drawn from the facts, the case must be submitted to the jury, and the trial judge has no discretion to enter a judgment of acquittal." *Id.* at 563, ¶ 18 (quoting *State v. Lee*, 189 Ariz. 590, 603 (1997)).

¶15      Addressing first Puma's arguments regarding whether a dangerous instrument was used and by whom, we conclude that a rational trier of fact could have found that a dangerous instrument was used by Puma to commit the robbery. During the robbery, the perpetrator had a crowbar in a bag in front of him, and he had a hand in the bag. Although Puma argued at trial that the crowbar was not used because it was in the backpack, the jury could have determined the crowbar was visible and used to intimidate the employee into opening the drawer and leaving the store. In fact, A.B. testified that one reason she complied with the intruder was because she was scared he might use the crowbar as a weapon.

¶16      Regarding identification of Puma as the perpetrator, although the witnesses could not directly identify him because his face was covered, the evidence revealed Puma using the stolen cards shortly thereafter. *See supra* ¶¶ 4–5. A juror could reasonably infer that the person who attempted to use the cards shortly after they were stolen was the person who stole them in the first place. On this record, the trial court did not abuse its discretion in denying Puma's Rule 20 motion for acquittal.

¶17      Addressing Puma's further challenge to the sufficiency of the evidence, we conclude that there was sufficient evidence to support a rational determination of guilt beyond a reasonable doubt for each of the elements of the charged offenses.

### III.    Sentencing

**¶18**    After the guilty verdict, the trial court conducted a hearing in which the State provided evidence of Puma's past convictions.  The trial court found that the State had proven the prior convictions by clear and convincing evidence.  Puma argues that under *Blakely v. Washington*, 542 U.S. 296 (2004), he had the right to have a jury determine any aggravating factors that would increase his sentence.  However, *Blakely* reaffirmed the exception recognized in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) that determination of prior convictions is not required to be submitted to a jury. *Blakely*, 542 U.S. at 301–2; *State v. Price*, 217 Ariz. 182, 184-85, ¶ 8 (2007).

**¶19**    Puma also contends that he was sentenced under the wrong statute.  Although the minute entry states that Puma was found guilty of armed robbery under A.R.S. § 13-706(A), the transcript and sentence imposed for armed robbery clearly indicate the trial court considered the prior aggravated or violent felony convictions and sentenced Puma under A.R.S. 13-706(B).  We find no reversible legal error or abuse of discretion by the trial court in sentencing Puma.  We will, however correct the sentencing minute entry to reflect sentencing under A.R.S. § 13-706(B) rather than A.R.S. § 13-706(A). *See State v. Ovante*, 231 Ariz. 180, 188, ¶ 38 (2013) ("When a discrepancy between the trial court's oral pronouncement of a sentence and the written minute entry can be clearly resolved by looking at the record, the '[o]ral pronouncement in open court controls over the minute entry.'  This Court can order the minute entry corrected if the record clearly identifies the intended sentence.") (citation omitted).

### IV.    *Anders* Review

**¶20**    Having considered defendant's and defense counsel's briefs and having examined the record for reversible error, *see Leon*, 104 Ariz. at 300, we find none.  The evidence presented supports the convictions and the sentences imposed fall within the ranges permitted by law.  As far as the record reveals, Puma was represented by counsel at all stages of the proceedings, and these proceedings were conducted in compliance with his constitutional and statutory rights and the Arizona Rules of Criminal Procedure.

**¶21**    Pursuant to *State v. Shattuck*, 140 Ariz. 582, 584–85 (1984), defense counsel's obligations in this appeal have ended.  Counsel need do no more than inform Puma of the disposition of the appeal and his future options, unless counsel's review reveals an issue appropriate for

submission to the Arizona Supreme Court by petition for review. Puma has thirty days from the date of this decision in which to proceed, if he desires, with a *pro se* motion for reconsideration or petition for review.

## CONCLUSION

¶22 For these reasons, Puma's convictions and sentences are affirmed with the modification that for Count 1, armed robbery, we hereby correct the sentencing minute entry to reflect that Puma was sentenced under A.R.S. § 13-706(B) rather than A.R.S. § 13-706(A).



Ruth A. Willingham · Clerk of the Court
F I L E D : ama