NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

LEONARDO HERNANDEZ MILL, SR., *Appellant*.

No. 1 CA-CR 21-0576
FILED 12-6-2022

Appeal from the Superior Court in Maricopa County
No. CR2020-141234-001
The Honorable Geoffrey H. Fish, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Rebecca Jones
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jesse Finn Turner
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Peter B. Swann[1] joined.

---

[1] Judge Peter B. Swann was a sitting member of this court when the matter was assigned to this panel of the court. He retired effective

**P A T O N, Judge**:

¶1        Leonardo Hernandez Mill, Sr., appeals his convictions and sentences for kidnapping, a class two felony; five counts of aggravated assault, class three and four felonies; and six misdemeanor offenses.  We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        "We view the facts in the light most favorable to sustaining the jury's verdicts" and resolve all reasonable inferences from the evidence against Mill.  *See State v. Felix*, 237 Ariz. 280, 283, ¶ 2 (App. 2015).

¶3        As they prepared for Friday morning mass, Father C. and Sister M. encountered a woman screaming in the back of the church.  Father C. recognized the woman as Betty,[2] who lived across the street with her husband, Mill, and their two children.  Betty's wrists were handcuffed together, zip ties bound her feet, and she had duct tape wrapped around her mouth, and a rope looped around her neck.  Betty was "exhausted," and her legs were covered in cuts and bruises and appeared to have been "whip[ped.]"  She said she had been "tied up" all night, and that Mill "did this to her."  Sister M. called 9-1-1.

¶4        Phoenix police officers soon arrived, and their body-worn cameras recorded video and audio of Betty describing how Mill restrained and beat her in their bedroom for twelve hours the previous evening.  The police arrested Mill at his and Betty's home.  Meanwhile, Betty was transported from the church to a hospital where a forensic nurse examined her.

¶5        During the nurse's examination and a separate interview at the hospital with a detective, Betty repeated her allegations against Mill.  She recounted how Mill threatened to kill her as he used a back scratcher and other items to strike her legs.  Betty also explained how Mill tied a rope around her neck and feet so she would choke herself if she bent over.  Betty

November 28, 2022.  In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge Swann as a judge *pro tempore* in the Court of Appeals for the purpose of participating in the resolution of cases assigned to this panel during his term in office.

2        We use a pseudonym to protect the victim's privacy.

further described how Mill cut her legs and breasts with a "small knife" and strangled her with his hands and "wood on her chin[.]"

**¶6**         Mill faced twelve felony and misdemeanor counts at trial, where the State introduced the videos depicting Betty as she spoke with police officers at the church. Additionally, the priest and nun who found Betty in the church, the officers who spoke with her, and the nurse who examined her all testified about Betty's allegations against Mill.

**¶7**         Betty, however, recanted those allegations when she testified. She told the jury that she experienced a mental health episode and went for a walk. According to Betty, a stranger pulled up in a vehicle and offered her a ride, which she accepted. Betty testified that she rebuffed the driver's sexual advances, and he hit her in the head. Betty claimed to remember nothing thereafter.

**¶8**         The jury returned guilty verdicts on all counts and found that the six felony counts were domestic violence offenses.[3] The jury found multiple aggravating factors for each felony offense, and that the kidnapping and two of the aggravated assault counts were dangerous offenses. Mill then moved for a new trial under Arizona Rule of Criminal Procedure 24.1, arguing the jury's verdicts were contrary to law or the weight of the evidence. *See* Ariz. R. Crim. P. 24.1(c)(1). The superior court denied the motion.

**¶9**         At sentencing, the court imposed a mitigated term for the kidnapping conviction and presumptive terms for the other felonies. This timely appeal followed. We have jurisdiction under the Arizona Constitution Article 6, Section 9, and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(2).

## DISCUSSION

**¶10**         Mill contends the superior court erred in denying his motion for new trial. We review the superior court's denial of a new trial motion for an abuse of discretion. *State v. Fischer*, 242 Ariz. 44, 48, ¶ 10 (2017).

**¶11**         The superior court may grant a new trial if the "weight of evidence" fails to support the jury's verdict. *See* Ariz. R. Crim. P. 24.1(c)(1). We do not weigh the evidence on appeal; our role "is to determine whether, resolving every conflict in the evidence in support of the [superior court's

---

[3]         The superior court found Mill guilty of the charged misdemeanor offenses. Mill does not challenge those convictions on appeal.

Rule 24.1] order, substantial evidence supports the . . . order." *See Fischer*, 242 Ariz. 52, ¶ 28.

I.     **The superior court was not required to grant Mill's motion for a new trial solely based on the victim's recanted statements.**

¶12     Mill generally argues that the superior court was required to grant a new trial based on Betty's trial testimony. He contends that the court "rel[ied] exclusively on the veracity of the statements made by [Betty] to the police" in denying the new trial motion. But Mill's argument presumes the court could not permissibly consider Betty's incriminating pretrial statements and then weigh that evidence against her trial testimony and other exculpatory evidence. That presumption is incorrect. *See* Ariz. R. Crim. P. 24.1(c)(1) (affording trial courts authority to grant a post-verdict motion for new trial if "the verdict is contrary to . . . the weight of the evidence"); *Fischer*, 242 Ariz. at 50, ¶ 18 (declining to preclude superior court from weighing evidence and assessing witness credibility when determining whether to grant new trial under Rule 24.1(c)(1)).

II.     **Sufficient evidence supported the jury's determination that Mill committed dangerous offenses.**

¶13     Mill also contests the jury's dangerousness finding with respect to the kidnapping and two of the aggravated assault convictions. As relevant here, an offense is "dangerous" if it involves the use of a "dangerous instrument" or "the intentional or knowing infliction of serious physical injury on another person." *See* A.R.S. § 13-105(13). "'Dangerous instrument' means anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury." A.R.S. § 13-105(12). Mill asserts no evidence established that the handcuffs or zip ties were dangerous instruments because they "were never used in a manner [that] could risk or threaten serious physical injury[.]"

¶14     We disagree. Based on Betty's day-after descriptions of Mill's assault, the superior court could reasonably determine that Mill used handcuffs and zip ties to bind Betty's wrists and ankles to hinder her ability to defend herself as he beat and strangled her. Under these circumstances, Mill used the handcuffs and zip ties in a manner that was "readily capable of causing death or serious physical injury." Further, the evidence establishes that Mill intentionally inflicted serious physical injury on Betty. Thus, regardless of whether the handcuffs or zip ties properly qualified as dangerous instruments, an independent basis existed to support the jury's dangerousness findings. *See* A.R.S. § 13-105(13) ("'Dangerous offense'

means an offense involving the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument *or the intentional or knowing infliction of serious physical injury on another person*.") (emphasis added).

**¶15**    Mill also concedes the State presented evidence that he used a rope to injure Betty, but he argues "the weight of such evidence was clearly against a guilty verdict." We decline Mill's apparent invitation to re-weigh the evidence. *See Fischer*, 242 Ariz. at 52, ¶ 28 ("The appellate court's role is not to weigh the evidence.").

**¶16**    Finally, Mill argues the weight of evidence did not establish he used a knife or strangled Betty during the assault. We disagree because substantial evidence shows otherwise. Betty told the forensic nurse that Mill used a "small knife" to cut her legs and breasts, and she repeated the allegation during her interview with the detective at the hospital. *See State v. Williams*, 111 Ariz. 175, 177-78 (1974) ("A conviction may be had on the basis of the [victim's] uncorroborated testimony . . . unless the story is physically impossible or so incredible that no reasonable person could believe it."). Moreover, photographs depicting Betty's lacerated breast and legs were admitted into evidence. Regarding the strangulation, Betty told the detective that Mill impeded her breathing by placing an object on her throat. And the evidence showed Betty sustained injuries to her neck that were consistent with her being strangled.

**¶17**    In sum, the superior court evidently disbelieved Betty's trial testimony and afforded it less weight relative to the statements she made the day after the incident. The court acted well within its discretion in doing so and did not err in denying the Rule 24.1 motion.

**CONCLUSION**

**¶18**    We affirm.

