NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

RAUL TEJEDA, *Appellant*.

No. 1 CA-CR 19-0396
FILED 6-8-2021

Appeal from the Superior Court in Yuma County
No. S1400CR201800891
The Honorable David M. Haws, Judge

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Robert J. Trebilcock
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge David D. Weinzweig joined.

---

**B R O W N**, Judge:

¶1        Raul Tejeda appeals from his convictions and sentences for aggravated assault against a peace officer, kidnapping, criminal trespass in the first degree, aggravated assault, unlawful flight from a pursuing law enforcement vehicle, and criminal damage.  We affirm as modified.

## BACKGROUND

¶2        We view the evidence in the light most favorable to sustaining the jury's verdicts, resolving all reasonable inferences against Tejeda.  *State v. Felix*, 237 Ariz. 280, 283, ¶ 2 (App. 2015).

¶3        Tejeda knocked on the door of M.C.'s trailer one evening and asked to see his son, a child he shares with M.C.'s daughter.  Tejeda forced his way inside, refused to leave, and prevented M.C. from leaving.  Tejeda became increasingly hostile, charged at M.C., grabbed her neck until she could not breathe, and threatened her with a pair of scissors.  In defense, M.C. scratched Tejeda's forehead, causing it to bleed.  While Tejeda was washing off the blood, M.C. ran to a neighbor's trailer and the neighbor called 911.

¶4        Two sheriff's deputies arrived a few minutes later.  Deputy Garcia parked his patrol car by an entrance to the trailer park, then stood by the car.  The deputy saw a Jeep sport utility vehicle move towards him and accelerate, forcing him to jump into his police car to avoid being hit.  The Jeep hit the patrol car's open door when it passed.

¶5        Deputies pursued the Jeep at speeds exceeding 100 miles per hour before ultimately abandoning the chase, fearing it endangered themselves and others in the surrounding area.  Neither deputy identified the Jeep's driver before they ended their pursuit, but Tejeda had left M.C.'s trailer in his Jeep after he attacked her.

¶6        A few days later, M.C. saw Tejeda as she drove to the grocery store.  She called the police, and deputies found him hiding in a restroom.

The State charged Tejeda with aggravated assault against a peace officer (Count 1), kidnapping (Count 2), burglary in the first degree (Count 3), aggravated assault (Count 4), unlawful flight (Count 5), and criminal damage of property in an amount of $1,000 or more but less than $2,000 (Count 6).

¶7        Before trial, Tejeda filed a written request for jury instructions that included "Preliminary Criminal 21 (Long Version): Jury to Be Guided By Official English Translation/Interpretation (Spanish)."  Rev. Ariz. Jury Instr. ("RAJI") Prelim. Crim. 21 (Long Version) (5th ed. 2019).  In relevant part, Preliminary Criminal 21 instructs jurors that (1) "[t]he evidence you are to consider is only that provided through the official court interpreters"; (2) "you must accept the English interpretation"; (3) "you must consider only the English interpretation"; (4) "[y]ou may not comment to fellow jurors on what you heard in [Spanish]"; and (5) "you may not retranslate for other jurors[.]"  *Id.*

¶8        During the settling of preliminary jury instructions, however, Preliminary Criminal 21 was not discussed.  When the superior court later asked the parties to review the final version of its proposed preliminary jury instructions, defense counsel did not object to the court's omission of Preliminary Criminal 21.  Defense counsel again failed to object to the absence of the instruction when the court read the preliminary instructions to the jurors.  A court interpreter ultimately translated the testimony of M.C., Tejeda's mother, and Tejeda's employer.

¶9        Tejeda testified at trial, admitting he argued with M.C. at her trailer but denying he assaulted her.  According to Tejeda, M.C. attacked him after he told her he planned to reveal personal information about her to her daughter.  He also testified that once M.C. had left her trailer, he drove his Jeep to his friend Mario's trailer nearby. Tejeda explained that Mario then took the Jeep back to Tejeda's trailer, which was next to M.C.'s, to retrieve contraband so the police would not discover it.

¶10        The jurors convicted Tejeda as charged on Counts 1, 2, 4, and 5. On Count 3, the jurors found him guilty of the lesser-included offense of first-degree criminal trespass, a class 6 felony.  On Count 6, Tejeda was convicted of the lesser-included offense of criminal damage, a class 2 misdemeanor.  Following the verdicts, Tejeda filed a motion for new trial under Arizona Rule of Criminal Procedure ("Rule") 24.1(c)(3)(A), asserting the jurors committed misconduct by re-translating testimony given in Spanish.  In the motion, Tejeda acknowledged that Preliminary Criminal 21

"was not requested." The State responded that Tejeda provided no evidence of juror misconduct.

¶11        At a hearing on Tejeda's motion, before it allowed defense counsel to call two jurors to testify, the court required counsel to make an offer of proof on their anticipated testimony. Defense counsel explained that the jurors, S.C. and M.D., had informed him in a post-verdict discussion that "bilingual jurors did an independent translation of Spanish language testimony."

¶12        Contrary to the offer of proof, Juror S.C. testified that no jurors had retranslated testimony during deliberations. Juror S.C. said he remembered his post-verdict conversation with defense counsel but did not remember saying that any jurors had retranslated testimony. Juror M.D. likewise testified that no jurors had retranslated testimony. He also denied telling defense counsel that retranslating had occurred.

¶13        After the jurors testified, defense counsel told the superior court he was "shocked" by the testimony because it was "at odds as to what those two gentlemen told [him] right after the trial." In ruling on the motion, the court admitted it erred in not giving Preliminary Criminal 21 even though it was not requested. Nonetheless, the court denied the motion for new trial.

¶14        The superior court later granted defense counsel's motion to withdraw from representing Tejeda because he, Attorney Parks, was a potential witness in any additional proceedings on the matter. Tejeda was then appointed new counsel, Attorney McDonald, who asked for a 60-day continuance to interview the remaining jurors. The court instead gave Tejeda 30 days to investigate the juror misconduct allegations and appointed an investigator to assist him.

¶15        Tejeda, through Attorney McDonald, moved to reconsider the superior court's refusal to grant a new trial, and the court held a hearing at which Attorney Parks testified. According to Attorney Parks, Juror S.C. told him that bilingual jurors had "retranslated and reemphasized certain portions of [M.C.'s] testimony during their deliberations." Parks said Juror M.D. nodded in agreement with that statement. The court denied the motion and later sentenced Tejeda as a category 2 repetitive offender to a combination of concurrent presumptive terms totaling 10.5 years'

imprisonment, awarding him 352 days of presentence incarceration credit on all counts.[1] Tejeda timely appealed.

## DISCUSSION

### A.    Failure to Give Preliminary Criminal 21

**¶16**     Tejeda first argues the superior court erred by failing to give jurors Preliminary Criminal 21.  Addressing the standard of review, Tejeda asserts he sufficiently preserved his claim of error because he requested the instruction in a pretrial filing.  But the State contends we should review only for fundamental error.

**¶17**     Although Tejeda listed the instruction in his written request filed a few months before trial, at trial he repeatedly failed to object to the omission of Preliminary Criminal 21 in a manner that would allow the court to correct the error.  Ariz. R. Crim. P. 21.3(b); *State v. Valenzuela*, 194 Ariz. 404, 405, ¶ 2 (1999).  Likewise, Tejeda's failure to obtain a ruling on his pretrial request for the instruction bolsters the conclusion he did not preserve his claim of error.  *Cf. State v. Lujan*, 136 Ariz. 326, 328 (1983) (failing to secure a ruling on a motion in limine, then failing to object at trial, waived error).  Moreover, his motion for new trial conceded he had not requested the instruction.  Thus, we review only for fundamental error resulting in prejudice.  *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018).

**¶18**     To establish reversible error under this standard, a defendant must first show the superior court erred.  *Id.*  If error occurred, the defendant must establish, under the totality of the circumstances, that such error (1) went to the foundation of the case, (2) took away a right essential to the defense, or (3) was so egregious that the defendant could not possibly have received a fair trial.  *Id.*  "If the defendant establishes fundamental error under prongs one or two, he must make a separate showing of prejudice[.]"  *Id.*  To establish prejudice, a defendant must show "a reasonable jury could have plausibly and intelligently returned a different verdict" absent the error.  *Id.* at 144, ¶ 31.  In applying the "could have" standard, we examine the entire record, including the parties' theories and arguments, as well as the evidence.  *Id.*  The State concedes trial error occurred in that Preliminary Criminal 21 should have been given to the

---

[1]     On Count 6, the court imposed the maximum sentence of four months in jail.  *See* A.R.S. § 13-707(A)(2).  Tejeda's sentence on Count 6 is discussed below, *infra* ¶¶ 31–33.

jury; therefore, we next decide whether such error was fundamental and prejudicial.

**¶19** "Preliminary instructions prepare a jury for trial and constitute an orientation by which the jury is made to understand its duties and responsibilities." *State v. Johnson*, 173 Ariz. 274, 276 (1992). "Where the law is adequately covered by instructions as a whole, no reversible error has occurred." *State v. Doerr*, 193 Ariz. 56, 65, ¶ 35 (1998). "We will reverse only if the instructions, taken together, would have misled the jurors." *Id.*

**¶20** Despite the superior court's failure to give Preliminary Criminal 21, the court properly instructed the jurors on how they should assess the credibility of witnesses and directed them to determine the facts only from the evidence produced in court. The court also admonished the jurors that they could not (1) receive evidence not properly admitted at trial, (2) independently research or investigate the case, and (3) consult any outside sources. We presume the jurors followed the court's instructions. *State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006).

**¶21** Based on the totality of the circumstances, we are not persuaded the omission of Preliminary Criminal 21 implicitly conveyed to the jurors that, despite the court's other instructions, they were free to retranslate the official interpretation of testimony, let alone that such omission rose to the level of fundamental error. *Compare State v. Gendron*, 168 Ariz. 153, 155 (1991) ("The United States Supreme Court has held that even the failure to give a presumption of innocence instruction is not *per se* fundamental error[.]") *with State v. Hunter*, 142 Ariz. 88, 89–90 (1984) (finding fundamental error when the superior court gave jury instructions improperly shifting the burden of proof to the defense). This is particularly so here, given Tejeda's testimony (without interpreter assistance) that he was involved in an altercation with M.C. at her trailer, and the jurors rejected his alternative account of the incident.

**¶22** Preliminary Criminal 21 informs jurors that its purpose is to ensure all jurors reach a decision based on the same set of facts, supported by properly admitted evidence. RAJI Prelim. Crim. 21 (Long Version). Under different circumstances, if a court's failure to give the instruction results in jurors considering a retranslation that does not reflect the evidence, it could constitute an error going to the foundation of the case or depriving the defendant of an essential right. *See Escalante*, 245 Ariz. at 142, ¶ 21. But in this case Tejeda has failed to satisfy his burden to establish a violation of either of those first two *Escalante* prongs because the superior

court accepted the jurors' testimony that no improper retranslating took place. Accordingly, Tejeda has not shown that fundamental error occurred.

**¶23** Even assuming fundamental error occurred, Tejeda fails to prove prejudice. When assessing juror misconduct, we afford great deference to the superior court's findings because it is in the best position to resolve conflicts in the testimony presented at the evidentiary hearing and to determine the effect, if any, of extrinsic evidence on the deliberations. *State v. Hall*, 204 Ariz. 442, 449, ¶ 23 (2003); *Pima Cnty. Juv. Action No. 63212-2*, 129 Ariz. 371, 375 (1981) ("The deference which appellate courts accord the trier of fact, whether judge or jury, to make determinations based on assessment of the credibility of witnesses is elementary."). Nothing in this record overcomes our deference to the superior court's finding that the testimony of the two jurors was credible.

**¶24** Nonetheless, to support his argument that retranslating may have occurred during deliberations, Tejeda cites instances of purported confusion by witnesses whose testimony was translated. But he challenges neither the adequacy of the official interpretation nor the presumption that court interpreters properly fulfill their duties. *State v. Mendoza*, 181 Ariz. 472, 475 (App. 1995). Rather, he merely speculates that the alleged translation issues caused bilingual jurors to retranslate the testimony. *See State v. Munninger*, 213 Ariz. 393, 397, ¶ 14 (App. 2006) (explaining speculation alone is insufficient to establish prejudice).

**¶25** When jurors found Tejeda guilty of lesser-included offenses on Counts 3 and 6, they necessarily acquitted him of the charged offenses, which weighs against a finding of prejudice because it "demonstrate[s] the jury's careful and proper consideration of the evidence." *State v. Stuard*, 176 Ariz. 589, 600 (1993). To that end, the burglary charged in Count 3 relied heavily on M.C.'s testimony, which jurors rejected at least in part. Tejeda has failed to establish the necessary prejudice for reversal.

## B. Denial of Motions for New Trial and Reconsideration

**¶26** Tejeda next argues the superior court erred by denying his motion for new trial under Rule 24.1(c)(3)(A) and his motion for reconsideration of that ruling. We review a superior court's refusal to grant a new trial based on alleged juror misconduct for abuse of discretion. *Hall*, 204 Ariz. at 447, ¶ 16.

**¶27** A defendant requesting a new trial under Rule 24.1(c)(3)(A) "bears the initial burden of proving that jurors received and considered extrinsic evidence." *State v. Olague*, 240 Ariz. 475, 481, ¶ 21 (App. 2016).

"[J]uror misconduct warrants a new trial if the defense shows actual prejudice or if prejudice may be fairly presumed from the facts." *State v. Miller*, 178 Ariz. 555, 558 (1994). "Once the defendant shows that the jury has received and considered extrinsic evidence, prejudice must be presumed and a new trial granted unless the prosecutor proves beyond a reasonable doubt that the extrinsic evidence did not taint the verdict." *Hall*, 204 Ariz. at 447, ¶ 16.

¶28     Jurors S.C. and M.D. both unequivocally denied that any retranslating occurred during deliberations and disputed Attorney Parks' characterization of their post-verdict conversation. The superior court acted within its discretion by accepting their testimony. It is also significant that the court did not receive any juror questions concerning the court interpreter's translation, and when the court polled the jurors, each affirmed that he or she had given true verdicts. Tejeda thus failed to carry his initial burden to prove the jurors received and considered extrinsic evidence,[2] and prejudice cannot be presumed. Nor has Tejeda shown actual prejudice. *See supra* ¶¶ 23–25.

¶29     Tejeda further contends the superior court improperly prohibited him from more exhaustively investigating the alleged juror misconduct. The record indicates otherwise. The court held two evidentiary hearings on his allegations, appointed him new counsel to pursue a motion for reconsideration, assigned him an investigator, and granted Attorney McDonald an extension to investigate the matter.

¶30     Moreover, Attorney Parks spoke only with Jurors S.C. and M.D. The superior court had no obligation to investigate Tejeda's unsupported assertion that other jurors might testify differently. *See State v. Davolt*, 207 Ariz. 191, 208, ¶ 57 (2004) ("[B]are allegations of juror misconduct are insufficient to trigger the trial court's duty to investigate the matter further."). The court did not abuse its discretion in denying Tejeda's motions.

## C.     Sentencing Error

¶31     Although not raised by either party, the record indicates the superior court fundamentally erred by sentencing Tejeda to concurrent jail and prison terms. A.R.S. § 13-707(A); *State v. Harris*, 134 Ariz. 287, 287, n.1

---

[2]     We assume without deciding that retranslated testimony constitutes extrinsic evidence.

(App. 1982). We will not ignore fundamental error when we encounter it, *State v. Fernandez*, 216 Ariz. 545, 554, ¶ 32 (App. 2007), and we must correct an "illegal sentence . . . imposed upon a lawful verdict," A.R.S. § 13-4037(A). An illegal sentence is fundamental error. *State v. Cox*, 201 Ariz. 464, 468, ¶ 13 (App. 2002).

**¶32** Because § 13-707(A) prohibits a court from ordering a misdemeanor sentence to be served in the department of corrections, Tejeda's concurrent misdemeanor sentence on Count 6 constitutes fundamental error. The error is prejudicial because Tejeda's jail sentence could remain, at least technically, unserved at the end of his prison sentence, and the uncertainty of the illegal concurrent sentence raises due process concerns. *See Escalante*, 245 Ariz. at 142, ¶ 21; *see also State v. Thomas*, 142 Ariz. 201, 204 (App. 1984) ("An illegal sentence is no sentence at all.").

**¶33** We need not remand for resentencing, however, because the record reveals the superior court intended to sentence Tejeda to a total of 10.5 years in custody on the felony convictions and to terminally dispose of Count 6 based on time Tejeda had already served in custody, which exceeded his four-month sentence on that count. *See State v. Lopez*, 230 Ariz. 15, 18, ¶ 9 n.2 (App. 2012) ("When we can ascertain the trial court's intent from the record, we need not remand for clarification."). Therefore, we modify Tejeda's sentence to reflect credit for four months of presentence incarceration and give effect to the court's intent to terminally dispose of Tejeda's misdemeanor conviction. Nothing in this decision changes the court's order awarding Tejeda 352 days of credit for the sentences imposed on the felony convictions.

## CONCLUSION

**¶34** We affirm Tejeda's convictions and the resulting sentences on Counts 1 through 5. On Count 6, we affirm Tejeda's conviction and sentence as modified above.

