NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

KENNETH KIPRONO KIRUI, *Appellant.*

No. 1 CA-CR 24-0622

FILED 04-08-2026

Appeal from the Superior Court in Maricopa County
No. CR2022-001578-001
The Honorable Kerstin G. LeMaire, Judge

**AFFIRMED**

COUNSEL

Bain & Lauritano, PLC, Glendale
Sheri M. Lauritano
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
Alison L. Kovalchick
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Veronika Fabian and Vice Chief Judge David D. Weinzweig joined.

---

**B R O W N**, Judge:

¶1            Kenneth Kirui appeals from his convictions and sentences for two counts of sexual assault and one count of kidnapping.  He argues the trial court erred by admitting other acts evidence, allowing a nurse to testify about the victim's statements, and preventing him from timely reviewing a jury questionnaire.  Because he has not shown that reversible error occurred, we affirm.

## BACKGROUND

¶2            "We view the facts in the light most favorable to sustaining the jury's verdicts and resolve all reasonable inferences against the defendant." *State v. Felix*, 237 Ariz. 280, 283, ¶ 2 (App. 2015).  Ellen (a pseudonym) and Kirui met through social media.  Ellen was 18 years old at the time.  On his profile, Kirui used a pseudonym and represented himself as being much closer to Ellen's age.  In reality, he was 47.  Several weeks later, they planned a date.

¶3            On January 20, 2020, Kirui drove to Ellen's home and then took her to his apartment, where he gave her a drink.  According to Ellen, after drinking the beverage, she passed out.  She recalled going through a cycle of briefly regaining, and then losing, consciousness.  Twice when she woke up Ellen remembered Kirui performing oral and penetrative sex on her. She struck Kirui and tried to "get him off of [her]" but fell asleep.  After waking up at another point, she recalled Kirui telling her he had taken pictures of her and showing her his phone, but she again passed out.

¶4            Eventually Kirui and Ellen left the apartment.  Kirui started to drive her back home but changed his mind and instead drove her to a fast-food restaurant.  After Kirui gave her money to buy him food, she went inside the restaurant but rather than placing an order she told employees what had happened.  The manager hid Ellen in the restaurant and called

the police.  Officers contacted both Kirui (who was still in the parking lot) and Ellen at the scene.

¶5          Ellen was then taken to the Mesa Family Advocacy Center ("Center"), where a sexual assault nurse examiner ("Nurse") performed a sexual assault exam.  The Nurse found several injuries during the exam on Ellen's genitals consistent with penetration.  As part of this exam, swabs were taken from Ellen's genitals.  Subsequent DNA testing revealed a mix of Ellen and Kirui's DNA on each other's genitals.

¶6          Kirui was charged with two counts of sexual assault and one count of kidnapping. Before and during most of trial, Kirui represented himself, with the aid of advisory counsel.  After an eight-day trial, the jury convicted Kirui on all counts.  The court sentenced Kirui to two, consecutive seven-year sentences on the sexual assault convictions, and a seven-year term of probation for the kidnapping conviction.  Kirui timely appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, -4033.

## DISCUSSION

### A.     Other Acts Evidence

¶7          Before trial, Kirui was implicated in a sexual assault case in Kansas.  The victim in that matter, Zoey (a pseudonym), alleged she had met Kirui through social media in May 2021; Zoey was 18 or 19 years old then, and Kirui had told her he was 25.  She believed his name was "Mohammed," and they arranged to go on a date.  Kirui picked Zoey up from her house and drove her to Wichita, which was 45 minutes away from her home.  Eventually, Kirui took Zoey to a hotel.  After they were inside, Kirui removed her clothes and over Zoey's repeated protest, performed several sex acts against her will.  Police searched Kirui's cell phone following an investigation into this assault.  On the phone, police found an image of Ellen's identification as well as photos showing Ellen lying on the floor nude, and seemingly unconscious.

¶8          The State moved to admit the evidence of the assault against Zoey under Arizona Rule of Evidence ("Rule") 404(b) and (c).  The State provided a recorded police interview with Zoey as evidence to support the motion.  The trial court found there was clear and convincing evidence to establish Kirui had committed the other acts.[1]    Though the court

---

[1]     The State also moved to admit evidence of acts Kirui allegedly committed against a third victim, but the trial court concluded there was not sufficient evidence to meet the requirements of Rule 404.

determined the other acts against Zoey "had minimal relevance to the proffered purposes of intent or absence of mistake," and were not admissible under Rule 404(b), the court did admit the evidence under Rule 404(c). The court found that the similarities between the other acts and the charged acts, which included meeting significantly younger women through social media, arranging to go on a date with them, taking them to private settings, and engaging in non-consensual sexual acts, were sufficient to provide a reasonable basis to infer Kirui had a character trait giving rise to an aberrant sexual propensity to commit the charged crimes. *See* Ariz. R. Evid. 404(c)(1)(B). Considering these similarities, along with the "reasonable temporal nexus" between the charged act and the other acts, the court concluded the probative value of the other acts were not substantially outweighed by the danger of unfair prejudice.

¶9         Kirui argues the other acts evidence related to Zoey's sexual assault did not meet the criteria of Rule 404(c), and thus the admission of such evidence was error. We review the admission of evidence for an abuse of discretion. *State v. Foster*, 258 Ariz. 472, 488, ¶ 65 (App. 2024).

¶10        In cases where the defendant is charged with a sexual offense, Rule 404(c) allows admission of evidence concerning "other crimes, wrongs, or acts . . . if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Ariz. R. Evid. 404(c). The court may admit such evidence only if: (1) the evidence allows the trier of fact to find the defendant committed the other act, (2) the other act provides a "a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged," and (3) the evidentiary value of the other act evidence is not substantially outweighed by unfair prejudice. *Id.*

¶11        Kirui first claims the evidence was insufficient to permit the jury to find he sexually assaulted Zoey. Because he has not yet been convicted of any of charges as to that victim, he believes the court could not admit the evidence. Not so. Kirui has provided no authority supporting the notion that conviction for other acts is required before admitting such evidence. Indeed, as Kirui correctly states, the trial court need only determine "that clear and convincing evidence supports a finding that the defendant committed the other act." *State v. Aguilar*, 209 Ariz. 40, 49, ¶ 30 (2004). This reflects a lesser standard of proof than that required for conviction. *State v. Renforth*, 155 Ariz. 385, 386 (App. 1987). The mere fact that Kirui has yet to be convicted for the other acts does not mean there was insufficient evidence to allow the court to admit evidence of those acts.

¶12 As to the second prong of the Rule 404(c) analysis, Kirui argues the State provided no evidence to provide a reasonable basis to infer he had a character trait giving rise to an aberrant sexual propensity to commit the offense charged. As the 1997 comment to Rule 404 explains, "the rule permits admission of evidence of the other act *either on the basis of similarity or closeness in time*, supporting expert testimony, or other reasonable basis that will support such an inference." Ariz. R. Evid. 404 cmt. to 1997 amend. (emphasis added). In this part of its Rule 404(c) analysis, the court described relevant similarities between the other acts and the charged acts: both involved the defendant and younger women, misrepresenting the defendant's identity to the victims through social media, taking the women to private settings, and engaging in non-consensual sexual acts over the victims' resistance. The similarities of the acts provide a reasonable basis to support the required inference under Rule 404(c)(1)(B).

¶13 We also reject Kirui's argument that the State "did not set forth the character trait they deemed that they were attempting to prove." The Rule does not require the State to prove a defendant has a specific character trait. *See State v. LaBianca*, 254 Ariz. 206, 211, ¶ 16 (App. 2022). Even so, the State's Rule 404(c) motion explicitly noted the trait at issue was Kirui's tendency to "engage[] in sexual conduct with nonconsenting women much younger than him." *Cf. Aguilar*, 209 Ariz. at 48–49, ¶ 28 (holding that adult, nonconsensual heterosexual acts are admissible under Rule 404(c)).

¶14 Nor do we find persuasive Kirui's assertion that the State failed to meet the third prong. Rule 404(c)(1)(C) requires the court to conduct an analysis under Rule 403, which requires preclusion of evidence if its probative value is substantially outweighed by the danger of, among other things, unfair prejudice. *See* Ariz. R. Evid. 403, 404(c)(1)(C). The rule also enumerates factors the court "shall also take into consideration" in conducting this analysis. Recognizing that trial courts stand in "a far better position than an appellate court to weigh potential prejudice," we defer to the court's balancing under Rule 403. *State v. Gomez*, 250 Ariz. 518, 522, ¶ 15 (2021). Kirui argues the evidence was "designed to evoke loathing" of him, and to cause the jury to "react in horror and with sympathy for the victims." But simply because other acts evidence may cause jurors to feel sympathy for the victims, or think less of Kirui, does not mean the trial court abused its discretion. Instead, admissibility of the evidence is governed by the factors outlined in Rule 404(c), and Kirui does not specifically address any of those factors. The court's analysis shows that it considered and

balanced the relevant factors, and the record supports the court's findings. Kirui has not shown the court abused its discretion.

### B.      Medical Diagnosis or Treatment Hearsay Exception

**¶15**        Kirui next challenges the admission at trial of statements Ellen made to the Nurse during the sexual assault examination.  We review evidentiary rulings for an abuse of discretion.  *State v. Tucker*, 205 Ariz. 157, 165, ¶ 41 (2003).

**¶16**        At trial, the Nurse described the exam she performed on Ellen.  The exam, requested by police, took place at the Center.  Before meeting and examining Ellen, the Nurse spoke with police to obtain background information and the reason for Ellen's visit.  The Nurse then met and spoke with Ellen privately.  She began by asking Ellen for a medical history and why she was there.  According to the Nurse, this question was relevant to any diagnosis, treatment plans and prescriptions.  The Nurse added that she asked similar questions for all exams, not just a sexual assault exam.  Ellen described the assault, including that she began going in and out of consciousness after consuming a cup of water, which Kirui had given her, and that she would awaken to Kirui committing sex acts against her.  Ellen also told the Nurse that she had fought back against Kirui and that she vomited during the assault.  The State asked to admit Ellen's statements into evidence under Rule 803(4).  Over Kirui's objection, the court admitted the statements.

**¶17**        Typically, out of court statements offered into evidence to prove the truth of the matter asserted in the statements are inadmissible hearsay.  Ariz. R. Evid. 801(c), 802.  But statements made for and reasonably pertinent to medical diagnosis or treatment that describe medical history, past or present symptoms, or the inception or general cause of such symptoms are admissible.  Ariz. R. Evid. 803(4).  Determining whether a statement is made for/pertinent to medical diagnosis or treatment involves a two-part test: (1) whether the declarant's apparent motive is consistent with receiving medical care, and (2) whether it was reasonable for a physician to rely on that information for diagnosis or treatment.  *State v. Robinson*, 153 Ariz. 191, 199 (1987).

**¶18**        Kirui argues the Nurse's evaluation was "merely a tool to investigate a crime and collect evidence," rather than to provide medical care, so Ellen's statements did not qualify for the medical diagnosis exception.  Although the record shows the medical exam was motivated in part to collect evidence (police referred Ellen to the Center and the Nurse

first spoke with police), the Rule 803(4) exemption does not vanish when a nurse provides medical care and collects evidence. *See State v. Lopez*, 217 Ariz. 433, 437, ¶ 15 (App. 2008).

**¶19** The Nurse's testimony indicates that her exam, and Ellen's responses to her question, were consistent with providing medical care to Ellen. The Nurse explained that receiving the medical history from the patient was meant to help guide the assessment, to offer medical treatment, and to provide a diagnosis. The Nurse added that she uses information about the patient's medical history to provide prescriptions and treatment plans, both of which she provided to Ellen after the examination. Also, nothing in the record shows that Ellen received any medical treatment before being examined by the Nurse. On these facts, the court could reasonably conclude that Ellen's statements qualified for the medical treatment exception. Kirui has not shown the court abused its discretion in admitting the statements under Rule 803(4).

### C. Jury Questionnaire

**¶20** Kirui's final argument concerns the court's handling of a jury questionnaire before trial. He claims the court sent a draft jury questionnaire to his advisory counsel before a pretrial conference, but not him personally. He argues this deprived him of his Sixth Amendment right to self-representation. We review constitutional claims de novo. *State v. Boggs*, 218 Ariz. 325, 332, ¶ 25 (2008).

**¶21** On June 11, before trial and while Kirui was representing himself, the trial court emailed a proposed jury questionnaire to the State and Kirui's advisory counsel. The court also clarified that jury selection would occur on June 13. Kirui himself was not privy to these emails and did not see the questionnaire until June 13 when the court held a pretrial conference. The State objected, asserting the court was violating Kirui's right to self-representation by scheduling the conference and distributing the juror questionnaire without including Kirui.

**¶22** At the pretrial conference, Kirui saw the jury questionnaire for the first time, and the court allowed him to review it during a brief recess. After returning from the break, Kirui wanted more time to review the questionnaire. The court instead offered to proceed with striking jurors who needed to be excused based on hardship, physical inability to serve on the jury, or some other response to the questionnaire, and allowing Kirui to ask any other questions at jury selection. Kirui did not object to the court's

planned approach or raise any concern about the jurors who were excluded that day.  Once voir dire actually began, Kirui was represented by counsel.

¶23          Kirui argues the court denied him the right to self-representation by not providing him with the jury questionnaire before the pretrial conference.  We disagree.  The record shows the court rectified its mistake by allowing Kirui to review the questionnaire and giving him the opportunity to ask any other questions he may have had during jury selection.   By the time voir dire began for jury selection, Kirui was represented by counsel.  Moreover, Kirui has not identified how the court's failure to timely provide him with the questionnaire impacted the jury.  He has not pointed to any question in the questionnaire that was objectionable or identified any question that should have been included.  Thus, Kirui's right to right of self-representation was not violated.

## CONCLUSION

¶24          We affirm Kirui's convictions and sentences.

